UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LLOYD, *et al.*, | : | Hon. Joseph H. Rodriguez |
| *Plaintiffs*, | : | |
| | : | Civil No. 21-17057 |
| v. | : | |
| | : | |
| THE RETAIL EQUATION, INC., *et al.*, | : | **OPINION** |
| *Defendants*. | : | |

Presently before the Court is the motion by defendant The Retail Equation, Inc. seeking an order dismissing all claims against it by plaintiffs Michael Murphy and Natalia Taboada for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) [Dkt. 12]. The Court is in receipt of the opposition filed by plaintiffs Michael Murphy and Natalia Taboada [Dkt. 19] as well as the reply of The Retail Equation, Inc. [Dkt. 26]. For the reasons set forth herein, the Court will grant the motion.

**I.  Background**

This is a putative class action concerning the alleged unlawful collection of consumer data and its use in approving or denying consumers returns or exchanges at certain retail stores. Plaintiffs Carol Lloyd ("Lloyd"), Michael Murphy ("Murphy"), and Natalia Taboada ("Taboada") (Lloyd, Murphy, and Taboada, collectively, the "Named Plaintiffs"), on behalf of themselves and the putative class(es) they seek to represent, initiated this suit on September 16, 2021 against defendants The Retail Equation, Inc. ("TRE"), Appriss Inc. ("Appriss"), The TJX Companies, Inc. ("TJX"), and Bed Bath & Beyond Inc. ("BB&B"), (Appriss, TJX, and BB&B, collectively, the "Retail Defendants").

1

The Retail Defendants are businesses with retail stores throughout the country. TJ Maxx and Marshalls together form the Marmaxx division of TJX. *Compl.* ¶ 10. [Dkt. 1] ("Complaint"). TJX is a Delaware corporation with its principal place of business and headquarters in Farmington, Massachusetts. *Id.* BB&B is a New York corporation with its principal place of business and headquarters in Union, New Jersey. *Id.* ¶ 11.

TRE is a company with whom the Retail Defendants contract, or have contracted, in an effort to combat retail fraud. TRE is a Delaware corporation and a wholly owned subsidiary of Apriss, Inc. with its principal place of business and headquarters in Irvine, California. *Id.* ¶ 12.

TRE provides a "software-as-a-service" that uses statistical modeling and analytics to detect fraudulent behavior when returns are processed at a retailer's return counter. *Mot.* at *2; *Compl.* ¶¶ 15, 28. Using its patented software, TRE generates "risk scores" for individual customers attempting to return or exchange items and makes recommendations to the Retail Defendants about whether to approve or deny the processing of same. *Id.* ¶¶ 14, 28. These "risk scores" are calculated with a mix of data collected by retailers, referred to as Consumer Commercial Activity Data and Consumer ID Data. *Id.* ¶ 2. Consumer Commercial Activity Data includes purchase and return history as well as the contents, method, and frequency of consumer purchases. *Id.* ¶ 18. Consumer ID Data contains information available on various forms of identification and includes "name, date of birth, race, sex, photograph, complete street address, and zip code." *Id.* ¶ 19. As the Complaint alleges,

> When a consumer attempts to make a return or exchange, Retail Defendants swipe or scan the consumer's driver's license, government-issued ID card, or passport and the original sales transaction receipt (if present), thereby identifying the consumer and the consumer's unique purchase, return, and exchange behavior. New Consumer Commercial Activity Data and Consumer ID Data are also generated at this time.
> . . .

2

> Without the consent or knowledge of consumers, Retail Defendants transmit and share with TRE the Consumer Commercial Activity Data and Consumer ID Data they collect from the consumers when consumers attempt to make a return or exchange. This data transfer is in addition to, and subsequent to, prior transfers of Consumer Commercial Activity Data and Consumer ID Data that occur on a continuous basis.

*Id.* ¶¶ 26-27.

Named Plaintiffs allege they were harmed by: (a) the sharing of Consumer Commercial Activity Data and Consumer ID Data by the Retail Defendants; (b) the receipt of Consumer Commercial Activity Data and Consumer ID by TRE; and (c) the use of Consumer Commercial Activity and Consumer ID Data. Named Plaintiffs claim that as a consequence of these practices, they are prevented from making future returns or exchanges without a receipt. *Id.* ¶ 5. The Complaint alleges causes of action for invasion of privacy against all Defendants (**Count One**); violations of California's Unfair Competition Law California Business & Professions Code §§ 17200 against TRE (**Count Two**); violation of the New Jersey Consumer Fraud Act N.J. Stat. Ann. § 56:8-1, *et seq.*, against the Retail Defendants and Appriss Inc. (**Count Three**); violation of the Fair Credit Reporting Act against TRE (**Count Four**); and, unjust enrichment against all Defendants (**Count Five**). *Id.* ¶¶ 83-128.

While Named Plaintiffs make similar allegations in the Complaint, their individual circumstances vary in that they reside in different states and made their respective attempted returns or exchanges at different retail locations. Specifically, Plaintiff Lloyd is a New Jersey resident who purchased merchandise from TJ Maxx through its website and allegedly attempted a return or exchange of that merchandise at an unidentified TJ Maxx store. *Id.* ¶¶ 34-35. Plaintiff Taboada is a New York Resident who purchased merchandise from a TJ Maxx store located in Massapequa, New York and allegedly attempted a return or exchange of that merchandise at an unidentified TJ Maxx store. *Id.* ¶¶ 46-47; *Prebble Decl.* ¶ 10 [Dkt. No. 12-2]. Plaintiff Murphy is

3

a Washington resident who purchased merchandise from a Bed Bath & Beyond store located in Lynnwood, Washington and attempted a return or exchange at an unidentified Bed Bath & Beyond store. *Id.* ¶¶ 58-59; *Prebble Decl.* ¶ 11.[1]

The Complaint alleges that "[p]ersonal jurisdiction and venue are proper in New Jersey and within this District because . . . Plaintiffs' claims alleged herein arose in substantial part in New Jersey and within this District; and because Defendants do substantial business in New Jersey and throughout this District."

TRE moves pursuant to Fed. R. Civ. P. 12(b)(2) for an order dismissing the claims asserted against it by plaintiffs Taboada and Murphy. While Murphy opposes dismissal of his claims against TRE, Taboada does not. *See Opp*. The Court's analysis therefore focuses on whether this Court has personal jurisdiction over the Murphy's claims. TRE's challenge to Murphy's assertion of personal jurisdiction centers around its corporate affiliations and the forum's connection to the alleged unlawful conduct.

## II. Discussion

### a. Legal Standard

A party may move for dismissal of an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 300 (3d Cir. 2001). A federal court may exert personal jurisdiction to the extent authorized by the law of the state in which that court sits. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). The New Jersey Long–Arm Statute permits the exercise of jurisdiction to the fullest extent allowed by the Due Process Clause of the Fourteenth

---

[1] None of the Named Plaintiffs allege where, geographically speaking, they attempted their purported return or exchange.

Amendment to the United States Constitution. *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 184 (3d Cir. 2000); N.J. Ct. R. 4:4–4. Due process limits a state's power to assert personal jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (citing *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878)).

Due process is satisfied when a defendant has certain minimum contacts with a forum state such that a court's jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted) (internal quotation marks omitted). The existence of minimum contacts provides "fair warning" to a defendant that he or she may be subject to suit in that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)). "A nexus between the defendant, the forum and the litigation is the essential foundation" of personal jurisdiction. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir.2001). These basic due process principles are reflected in the two primary forms of personal jurisdiction: general and specific.

Here, the Murphy does not dispute that the Court lacks general personal jurisdiction over TRE, but the parties are in disagreement as to whether specific personal jurisdiction may be asserted. Accordingly, the Court's jurisdictional analysis focuses on specific jurisdiction. *See Pennzoil Prods. Co. v. Colelli & Associates, Inc.*, 149 F.3d 197, 200–01 (3d Cir. 1998) ("[N]o party in this case contends that there is a basis for general jurisdiction in Pennsylvania—so we are free to consider solely whether the alternative form of personal jurisdiction is present: specific personal jurisdiction.").

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1019 (2021). The Third Circuit has developed a three-part test for determining whether specific personal jurisdiction exists as to a particular non-resident defendant.

First, the defendant must have purposefully directed its activities at the forum. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). This prong is known as "purposeful availment," and focuses on contacts that the defendant itself generated within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The "purposeful availment" requirement is designed to prevent a defendant from being haled into a forum "solely as the result of random, fortuitous, or attenuated contacts," or due to the "unilateral activity of another party or third person." *Id.* (internal quotations and citations omitted).

Second, the litigation must "arise out of or relate to at least one of those activities." *O'Connor*, 496 F.3d at 317 (internal quotations and citations omitted). This has been described as the "relatedness" prong. The Supreme Court recently clarified the relatedness requirement in *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773 (2017). There, it held that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For litigation to "arise from or relate to" a defendant's contacts with a state, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 1781 (internal quotations and citations omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The

question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. The relatedness requirement is a "necessarily fact-sensitive" inquiry designed to "keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations." *Id.*

Third, if the first two requirements are met, the exercise of jurisdiction must "'otherwise comport with fair play and substantial justice.'" *O'Connor*, 496 F.3d 312, 324 (3d Cir. 2007) (quoting *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154). To overcome the presumption of constitutionality, "the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King*, 471 U.S. at 477).

If a defendant raises lack of personal jurisdiction as a defense, under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). The plaintiff "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Turner v. Boyle*, No. 12-7224, 2013 WL 1409903, at *3 n.1 (D.N.J. Apr. 8, 2013) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir. 1984)); *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603–04 (3d Cir. 1990). A plaintiff's allegations are "taken as true and factual disputes drawn in its favor" when the district court does not hold an evidentiary hearing on the jurisdictional facts. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

  b.  **Analysis**

7

Murphy rests his theory of personal jurisdiction on two purported contacts. According to Murphy, the "contract [between TRE and BB&B] forms a sufficiently substantial connection with New Jersey." *Opp.* at *6. Additionally, Murphy submits that TRE's "use of Bed Bath & Beyond's data collected from around the country in its New Jersey Headquarters establishes its purposeful business in New Jersey." *Id.* at *7. Neither of these asserted contacts, taken alone or in conjunction, are sufficient for personal jurisdiction to lie over TRE in this forum.

TRE's purported contract with BB&B is no proxy for adequate in-forum contacts. Although a "single act can support jurisdiction" in an appropriate case, that act must create a "substantial connection" to the forum. *Burger King*, 471 U. S. at 475. "A nonresident's contracting with a forum resident, without more, is insufficient to establish the 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident" *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) (quoting *Burger King*, 471 U. S. at 478); *see also Proteonomix, Inc. v. Crompton*, No. 2:09-CV-00266, 2009 WL 10728610, at *2 (D.N.J. Nov. 10, 2009). Applying this rule, a court sitting in the Western District of Pennsylvania recently rejected a Pennsylvania-resident plaintiff's argument that jurisdiction could properly lay in that forum based on Best Buy's "negotiating and entering into a contract" with defendant The Retail Equation. *Hannum v. Retail Equation, Inc.*, No. CV 21-997, 2022 WL 4236714, at *1 (W.D. Pa. Sept. 13, 2022). The court described that the plaintiff's contention in this regard "blithely ignores the Court of Appeals for the Third Circuit's requirement of purposeful availment" and observed that what is necessary is "a deliberate targeting of the forum . . . so efforts to exploit a national market that necessarily included [the forum] are insufficient . . ." *Id.* (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018)); *see also Redi-Data, Inc. v. Spamhaus Project*, No. 20-CV-17484, 2022 WL 3040949, at *5 (D.N.J. Aug. 2,

2022) ("even if [defendant] purposefully availed itself of a larger forum that includes New Jersey within it, this does not equate to purposeful availing itself of New Jersey.").

In analyzing specific personal jurisdiction, courts take a circumspect approach and are directed to examine the relationship among the parties, the forum, and the litigation. *Miller Yacht Sales*, 384 F.3d at 96. Here, the purported contract to which Murphy refers would govern TRE and BB&B's respective obligations to each other. It is not a contract between the TRE and Murphy. While it is undeniable that TRE engaged in certain activities within the forum by contracting with BB&B to service its stores throughout the country including locations in New Jersey, "acts conducted within the state alone do not demonstrate specific jurisdiction; the activity must have given rise to the cause of action." *Burger King*, 471 U.S. at 472; *see also W. Union Tele. Co. v. T.S.I., Ltd.*, 545 F.Supp. 329, 334 (D.N.J. 1982) ("There must be contacts between the transaction at issue and the forum state, as opposed to contacts between the defendant and the forum state."). Although there can be no dispute that the purported contract would be a "but for" cause in the sense that if it had never been formed TRE would not have performed services to BB&B, courts require a "tighter connection between the elements of the claim and the connections to the forum state." *Ojeda v. Louis Berger Grp. (Domestic), Inc.*, No. CV1817233, 2021 WL 941875, at *11, 13 (D.N.J. Mar. 11, 2021) ("a contract with a party in the forum is not sufficient to confer jurisdiction, even if the contract is a but-for precondition of the ultimate controversy. That is especially true where the cause of action is not one between the parties to that contract, for breach of that contract."). In other words, "[i]t is not enough that a defendant's contacts with a forum relate to the same general subject matter as the claim." *Id.* at *11. Rather, the valid exercise of personal jurisdiction requires a "meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claim."

*O'Connor*, 496 F.3d at 323. Here, TRE's contract with BB&B clearly relates to the general subject matter of Murphy's claims against TRE. Yet, it is not the focal point of the activities alleged to form the basis of TRE's liability in the present context. *See Walden*, 571 U.S. at 286 ("a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Accordingly, TRE's contract with BB&B alone does not form a sufficiently substantial connection with this forum such that personal jurisdiction may be exercised over Murphy's claims against TRE.

Murphy's attempt to demonstrate sufficient contacts through TRE's performance under the contract is likewise unavailing. Murphy's claims against TRE arise principally from the activities surrounding Murphy's attempted return or exchange of BB&B merchandise at a Washington BB&B retail location. At the time of the attempted return or exchange, the BB&B sales associate "entered Plaintiff Murphy's identifying information into its computer system[.]" *Opp.* at *2. Murphy's information was transmitted to TRE. *Id.* TRE allegedly used that information to generate a "risk score" for Murphy to assess the risk of fraud associated with his return. *Id.* TRE then responded *directly* to the BB&B sales associate at the Washington store and provided its recommendation that the attempted return or exchange be declined. *Compl.* ¶ 66. The alleged liability-creating conduct by TRE therefore is particularly its receipt of Murphy's information and its use of that information in recommending the return or exchange be declined. But fundamentally, no where in the Complaint is the receipt and use of Murphy's transaction and identifying information by TRE specifically alleged to have occurred in New Jersey. Nor has it been specifically alleged in the Complaint that TRE communicated with BB&B headquarters regarding Murphy either on July 13, 2020 at the time of the attempted return or exchange, or

earlier. Murphy alleges generally that the "Retail Defendants' data collection efforts are most prevalent at the point of sale and point of return and exchange[.]" *Compl.* ¶ 17. But the Complaint is lacking by way of further details on where, when, what and how (if at all) any of Murphy's transaction and/or identifying information was collected and transmitted to TRE by BB&B at its New Jersey headquarters prior to or at the time of the attempted return on July 13, 2020.[2] Murphy's allegations are therefore too conclusory to support that his claims arise out of TRE's activities within New Jersey for purposes of establishing specific personal jurisdiction. *See Provident Nat'l Bank*, 819 F.2d at 437 ("the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction.").

Even assuming certain information was collected and transmitted from BB&B in New Jersey prior to or at the time of the attempted return or exchange, this still would not be enough to show purposeful availment. In *Cap. Suppression Co., LLC v. Kurant*, No. CV 19-2759, 2019 WL 6910133 (E.D. Pa. Dec. 19, 2019), the court held that the misappropriation of customer information communicated from an entity's headquarters in Pennsylvania to defendant employees in Maryland did not subject the Maryland defendants to specific personal jurisdiction in Pennsylvania. The court found that "because the defendants received the proprietary

---

[2] Rather, the Complaint only generally alleges that "[w]hen a consumer attempts to make a return or exchange, Retail Defendants swipe or scan the consumer's driver's license, government-issued ID card, or passport and the original sales transaction receipt (if present), thereby identifying the consumer and the consumer's unique purchase, return, and exchange behavior. New Comsumer Commercial Activity Data and Consumer ID Data are also generated at this time" and that "[w]ithout the consent or knowledge of consumers, Retail Defendants transmit and share with TRE the Consumer Commercial Activity Data and Consumer ID Data they collect from the consumers when consumers attempt to make a return or exchange. This data transfer is in addition to, and subsequent to, prior transfers of Consumer Commercial Activity Data and Consumer ID Data that occur on a continuous basis." *Compl.* ¶¶ 26-27.

11

information from Capital in the course of doing their job duties in Maryland, the defendants did not target their conduct at Pennsylvania to obtain Capital's proprietary information." *Cap. Suppression Co., LLC*, 2019 WL 6910133, at *9. The court further concluded that "[t]he few contacts the defendants had with Pennsylvania were initiated by Capital's employees, who directed the communications from Pennsylvania toward the defendants in Maryland." *Id.* at *10. Here, even if jurisdictional discovery were to show that Murphy's customer information was transmitted or processed from BB&B headquarters and data centers in New Jersey, at most this might plausibly demonstrate that BB&B in New Jersey directed such activities at TRE in California – but not the inverse. Accordingly, Murphy's request to conduct jurisdictional discovery for the purpose of developing that theory is denied.

### III.     Conclusion

For the reasons set forth herein, the motion by defendant The Retail Equation, Inc. seeking an order dismissing all claims against it by plaintiffs Michael Murphy and Natalia Taboada for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) [Dkt. 12] will be granted. An appropriate order will follow.


December 29, 2022                             /s/ Joseph H. Rodriguez
                                              Hon. Joseph H. Rodriguez, USDJ